**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
GARDEN CITY BOXING CLUB, INC.,

                Plaintiff,

            - against -

704 NOSTRAND CORP. d/b/a SABEB
INTERNATIONAL SPORTS LOUNGE, and
GREGORIO R. MITCHELL,

                Defendants.
-----------------------------------------------------------X

**REPORT & RECOMMENDATION**

06-CV-4875 (CBA) (RER)

**RAMON E. REYES, JR., Magistrate Judge:**

      Plaintiff Garden City Boxing Club, Inc. ("plaintiff" or "Garden City") seeks an award of damages against defendants 704 Nostrand Corp. doing business as Sabeb International Sports Lounge ("Sabeb Lounge") and Gregorio R. Mitchell ("Mitchell") for alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a) ("FCA"). *See* Complaint at ¶ 1. As a result of defendant's failure to answer the complaint, Garden City moved for default judgment and the Honorable Carol B. Amon referred the matter to me for a report and recommendation on the issue of damages. For the reasons that follow, I respectfully recommend that plaintiff be granted judgment in the amount of $3350 against defendants.

I.    Background

    A.    Procedural History

      Garden City filed its complaint on September 9, 2006, and claims to have served Mitchell and Sabeb Lounge on October 19 and 20, 2006, respectively. Docket Entries 2 and 3. Almost eight weeks later, neither Sabeb Lounge nor Mitchell had yet responded to the complaint, and Garden City filed a motion for default judgment. Docket Entry 5. The Clerk

noted the defendants' default on November 3, 2005. Docket Entry 6. Judge Amon subsequently referred Garden City's motion for default judgment to me for a report and recommendation along with an inquest on damages and costs. Docket Entry dated January 8, 2007. On January 22, 2007, Garden City submitted a memorandum of law is support of its request for damages.

B.    Facts

Garden City is a California-based corporation that obtains licenses to distribute pay-per-view events to commercial establishments. Complaint ¶¶ 4, 8-9. As part of its business, Garden City enters into sublicensing agreements with various commercial establishments to allow them to exhibit certain broadcast events to their patrons via closed circuit television and encrypted satellite signal. Complaint ¶¶ 10-11. The particular pay-per-view broadcast at issue in this suit included the "De La Hoya/Mosley" boxing match of September 13, 2003, and other fights on the undercard that night (the "Event"). Complaint ¶ 8.

Garden City hired a non-party auditing firm, M.B. Investigation, to find establishments that unlawfully exhibited the Event. Plaintiff's Memorandum of Law in Support of Request for Judgment by Default ("Pl's Br."), at 3; Affidavit of Henry A. Moorhead, Jr., dated September 15, 2003 ("Audit Aff."). On the night of the Event, one of M.B. Investigation's investigators visited Sabeb Lounge, a business located in Brooklyn, New York, and reported that the Event was shown on two 27 inch televisions to about 60 patrons. Audit Aff. At 1. There is no mention of any advertising in or near the establishment.

II.     Discussion

    A.     Liability

Upon the entry of default, a party concedes all well pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); Fed. R. Civ. P. 8(d)). Garden City's complaint establishes defendants' liability under each of the two statutory provisions cited in the complaint, 47 U.S.C. § 553 and § 605. The former section precludes "intercept[ing] or receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. 47 U.S.C. § 553. The latter prohibits the unauthorized interception and publication or divulgence of "any radio communication." *See* 47 U.S.C. § 605(a). To the extent that defendants obtained the transmission without proper authorization, their actions violated § 553(a). *See Entm't by J&J Inc. v. Mama Zee Rest. & Catering Servs., Inc.*, No. 01-CV-3945 (RR) (SMG), 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002) (illegal interception of pay-per-view boxing match that originated as a satellite signal and was transmitted over cable constitutes theft of services offered over a cable system in violation of § 553(a)). Moreover, because Garden City alleges that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a). *See Int'l Cablevision v. Sykes*, 75 F.3d 123, 131 & n.5 (section 605(a) applicable to cable theft where intercepted broadcast originated as a radio transmission); *Mama Zee*, at *2. Although the facts established by the default suffice to show defendants' liability under both provisions, a plaintiff may only recover under a single section of the Communications Act. *See Mama Zee*, at *3. Garden City has elected the remedies pursuant to § 605(a). *See* Pl's Br.

B. <u>Damages</u>

Notwithstanding the default, Garden City must still prove its damages if they are neither "susceptible of mathematical computation" nor liquidated as a consequence of the default. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citations omitted); *see* Fed. R. Civ. P. 55(b)(2). To determine the appropriate amount of damages, courts have "the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing." *DirecTV, Inc. v. Perrier*, 2004 WL 941641, *2 (W.D.N.Y. March 15, 2004) (citations omitted).

A claimant who has established liability under § 605(a) may elect to recover either actual damages plus the defendant's profits, if any, or an amount in a statutorily-defined range. *Id.* § 605(e)(3)(C)(I). Garden City has elected the latter. The statutory range for such damages is $1,000 to $10,000 per violation. *See id.* The statute commits to the court's discretion the determination of the specific amount within that range to be awarded. *See id.*; *Mama Zee,* 2002 WL 2022522, at *3. In addition, where a violation was "willful" and "for purposes of direct or indirect commercial advantage or private financial gain," the court can award up to an additional $100,000 in enhanced damages for each violation of § 605(a).

1. <u>Statutory Damages</u>

In determining the proper amount of statutory damages, a court may consider such factors as "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant,...the financial needs and earning ability of the defendant...as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose." *Cablevision Sys. Corp. v. De Palma*, No. 87-CV-3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting *Cablevision Sys. Dev. Co. v. Cohen*, No. 84-CV-1155, slip. op. at 4-5 (E.D.N.Y. May 20, 1988).

Some courts have awarded flat amounts when calculating damages. *See Home Box Office v. Champs of New Haven*, 837 F. Supp. 480, 484 (D. Conn. 1993) (awarding $10,000 in statutory damages); *Kingvision Pay-Per-View Ltd. v. Brito*, No. 05 Civ. 1042, 2006 WL 728408, at *2 (S.D.N.Y. Mar. 20, 2006) (awarding $5,000 in statutory damages); *Kingvision Pay-Per-View, Ltd. v. Ruiz*, No. 04 Civ. 6566, 2005 WL589403, at *2-3 (S.D.N.Y. Mar. 9, 2005) (awarding $5,000 in statutory damages). Other courts have assessed damages by multiplying the number of patrons who viewed the event by the amount an individual would pay to view the program at home on a pay-per-view channel. *See Time Warner Cable of New York City v. Taco Rapido Rest.*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) (awarding statutory damages of $50 per patron); *Cablevision Systems Corp. v. 45 Midland Enterprises*, 858 F. Supp. 42, 45 (S.D.N.Y. 1994) (same).

Plaintiff seeks the maximum statutory damage award of $10,000. Pl. Br. at 14. I find that such an award is disproportionate to the violation of the statute at issue here, especially in light of the fact that it would have cost defendants only $600 to exhibit the Event legally. *Id.* at 9. An award more than ten times the amount of the sublicense fee is unjust, and would amount to a windfall for plaintiff, something which the relevant statute does not contemplate. I find that an award of $3,000 in statutory damages is appropriate. This amount takes into account the pecuniary loss of plaintiff – $600 – and the financial resources, needs, and earning ability of the defendant, as well as the burden that a greater damage award would impose on the defendant. *See* Audit Aff. at 2 (rating Sabeb Lounge as "Poor"). Given the default, while there is little information in the record to assess defendants' financial circumstances, I am sure that these defendants do not have the financial ability to afford a higher statutory damage award. This

amount, while slightly less, is in line with other statutory damage awards I have recommended and other courts have awarded.

    2.  Enhanced Damages

Garden City also seeks enhanced damages of $30,000 on the ground that the violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii); Pl's Br. at 18. It appears to base this assertion not on any evidence, but rather on the theory that Sabeb Lounge could not have managed to display the Event without some affirmative act, and that it exhibited the Event with the "purpose and intent . . . to secure a private financial gain. . . ." Pl's Br. at 17.

As a threshold matter, Garden City's assertion that the violation was willful is *not* established by virtue of the default, because willfulness is an issue of damages only, not liability. *See J&J Sports Productions, Inc. v. Louisias*, No. 06-CV-339 (ERK) (RER), 2006 WL 1662608, at *4 & n.6 (E.D.N.Y. May 16, 2006). Moreover, as I have pointed out in another case involving a similarly situated plaintiff:

> [w]hile plaintiff alleges that defendants could only receive the Event through illegal means, this Court is not so convinced. In other cases involving this plaintiff and others, counsel has admitted that, not infrequently, cable and satellite television providers knowingly connect commercial establishments to cable service and then bill them at residential rates without any affirmatively misleading conduct from the establishments themselves. *Thus, it is quite possible that these defendants signed up for cable television legitimately, and through no fault of their own, were charged a residential, as opposed to commercial, rate.*

*Id.* at * 4 (emphasis added).

Further, while in some cases involving restaurants or lounges courts have awarded enhanced damages based on the suspected increase in patrons and sales of food and beverages because of the unauthorized exhibition of a boxing event, the same logic does not follow in this

case. As plaintiff's auditor's own affidavit makes clear, no cover charge was assessed and, "[i]n the bar, the patrons were mostly in the rear room and they *were not buying (many any) drinks from the bar*." Audit Aff. at 2 (emphasis added). Thus, there is no evidence that defendants made any money as a result of exhibiting the Event, much less enough money to justify an enhanced damages award of $30,000.

In any event, I believe an award of enhanced damages is unnecessary as the statutory damage award of $3000 will sufficiently punish defendants and deter them, and others, from engaging in such conduct in the future.

C.  Attorneys' Fees and Costs

The FCA mandates the award of reasonable attorneys' fees and costs to a prevailing party. *See* 47 U.S.C. § 605(e)(3)(B)(iii). A request for attorneys' fees must be supported by "contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" *DirectTV v. Meinecke*, No. 03 Civ. 3731 (JGK) (GWG), 2004 WL 1535578, at *4. (S.D.N.Y. July 9, 2004) (citing *New York Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983)). In support of its request for attorneys' fees, Garden City has not submitted an affidavit from counsel, and I therefore recommend denying Garden City's application for attorney's fees.

I do, however, recommend that Garden City be awarded $350 in costs for bringing this action. *See, e.g., Louisas*, 2006 WL 1662608, at *6.[1]

---

[1] Without explanation plaintiff also seeks an award of $6000 in interest (at 9%) from September 2003 through January 3, 2006. *See* "Statement of Damages" annexed to Pl's Br. Putting aside that there is no discussion of why plaintiff is entitled to interest of this amount, I note that pre-judgment interest is not recoverable under § 605(a). *See Kingvision Pay-Per-View, Ltd. v. Autar*, 426 F. Supp. 2d 59, 65 (E.D.N.Y. 2006). Accordingly, I recommend that plaintiff's request for interest be denied.

III.     Recommendation

For the reasons set forth above, I respectfully recommend that the court grant Garden City's motion for default judgment against defendants, in the amount of **$3,350**.  Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Carol B. Amon within ten business days of receipt hereof.  Failure to file timely objections may waive the right to appeal the District Court's Order.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).  Plaintiff is hereby directed to serve copies of this Report and Recommendation upon defendants by February 9, 2007 at their last known address, and to file proof of service with the Clerk of the Court.

**Dated: February 5, 2007**
       **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**